**Willie B. DENSON, Plaintiff,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 86–26–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

March 15, 1988.

---

Eugene C. Black, Jr., Albany, Ga., for plaintiff.

Jack Hood, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Now pending before this court [1] is plaintiff Willie B. Denson's motion for reversal or remand of the Secretary of Health and Human Services' decision denying plaintiff's claim for disability insurance benefits. All administrative remedies have been exhausted. Jurisdiction arises under 42 U.S. C. §§ 405(g) and 1383(c)(3).

On two previous occasions, plaintiff had applied for supplemental security income, a period of disability and disability insurance benefits. Plaintiff's applications were in each instance denied. An Administrative Law Judge ("ALJ") twice determined that plaintiff had the residual functional capacity to perform his past relevant work as a school bus driver; thus, the ALJ found that plaintiff was "not disabled." In each case, the Appeals Council denied plaintiff's request for review, and in neither case did plaintiff pursue his judicial remedies.[2]

Plaintiff filed a third application for supplemental security income, a period of disability and disability insurance benefits on October 15, 1984. This third application is the subject of this order, and this application encompasses the period beginning August 1, 1984. Following the denial of plaintiff's claim, the ALJ held a hearing on August 8, 1985. At the time of this hearing, plaintiff was fifty-eight years old.

The testimony elicited at the hearing and the exhibits included in the record paint the following portrait of plaintiff Denson. Though he received a seventh grade education, plaintiff is at best a marginal reader and quite possibly functionally illiterate. What limited reading ability plaintiff enjoys is severely limited by poor eyesight and other eye problems. He testified that he needs glasses, and he complained that his eyes fill with fluid, that they "run water all the time." Record at pp. 38–39, 52–56. Plaintiff suffers from a gunshot wound in his right leg that was inflicted in 1972. See Record at p. 41. Plaintiff has sought medical attention frequently over the past several years for back problems and pain. He was hospitalized for back pain and prostate problems from October 3, 1984, to October 11, 1984. Medical evidence established that plaintiff suffers from degenerative arthritis in the lumbosacral spine. Annulus bulging and spurring also appear. These problems cause pain in plaintiff's back which radiates down plaintiff's right leg. Plaintiff takes both pain and anti-inflammatory medication. Dr. William Hornback stated that the x-ray findings of degenerative arthritis correlate with plaintiff's subjective complaints. See Record at pp. 47–49, 150–51, 154–55, 160–61, 165, 182–83. Though noting that no herniated disc was discovered and that plaintiff's range of motion was essentially within normal limits, Dr. Hornback described plaintiff as unable to perform any heavy, physical or manual labor and as disabled. See Record at p. 165.

Several significant limitations upon plaintiff's activities were identified, including an inability to sit, stand or walk for up to six hours, an inability to lift more than ten-fifteen pounds, an inability to climb, balance, stoop or crouch, and limited ability to kneel and crawl and to push and pull. Due to an injury to plaintiff's right shoulder, he enjoys only a limited ability to reach and handle. These limitations result from degenerative arthritis, degenerative lumbosacral disease, muscle atrophy, weakness and pain in plaintiff's right leg, and injury to plaintiff's right shoulder. See Record at pp. 165, 182–83, 193–94.

The above enumerated medical findings and subjective complaints were corrobo-

---

1. This case, originally referred to the magistrate on August 7, 1986, has been referred back to this court due to the magistrate's heavy caseload.

2. This court does not disturb the Secretary's decision that plaintiff's entitlement to a period of disability and disability benefits prior to July 31, 1984, is precluded by the doctrine of *res judicata*. See Record at pp. 18–19.

rated by the observations of employees of the Secretary. On forms prepared for the Secretary, these employees noted that plaintiff had difficulty reading, sitting and walking. "He sits bent over with his hands on his back. From time to time he rubs his right thigh [and] knee." Record at p. 123. Plaintiff appeared "uncomfortable while sitting. He constantly shifts his weight in his chair. Also, [he] sits somewhat forward in his chair. He walks stooped over and appears to be stiff." Record at p. 129. Plaintiff "appears very limited by education.... He can barely read and write." *Id.*

Mrs. Nelons, plaintiff's neighbor and a witness at the hearing, supported plaintiff's contentions regarding both his inability to read and his inability to work around the house. She stated that he limped badly and literally "dragged" himself across the street to a store. Mrs. Nelons recalled noting that driving exacerbated plaintiff's medical problems, particularly his employment as a cement truck driver. *See* Record at pp. 58–60.

Despite the above-summarized evidence, the Secretary found that plaintiff could perform his past relevant work as a school bus driver; therefore, the Secretary found plaintiff "not disabled." The Secretary's findings included the following: plaintiff has no problems with his eyes; plaintiff has not been told by his doctor to cut back or limit his activities; plaintiff walks to the store and attends church; and plaintiff continues to drive. *See* Record at p. 19. The Secretary found Dr. Hornback's assessment of plaintiff's condition not credible since it was supported only by the radiographic studies and plaintiff's subjective complaints. He stated that such an assessment was contrary to other medical evidence. Record at p. 20. Another examination, conducted by Dr. Indra Shah, was discredited because it relied too heavily upon plaintiff's subjective complaints. Dr. Shah did x-ray plaintiff's spine and noted the presence of a degenerative spine disease. *Id.*

Regarding plaintiff's pain, the Secretary stated that while plaintiff "has experienced and will continue to experience some symptoms of discomfort due to his condition[,] ... the degree of discomfort has not been shown to be of sufficient severity and frequency to preclude him from engaging in substantial gainful activity." Record at p. 21. The Secretary stated that "claimant's allegations of multiple subjective complaints are credible to preclude heavy work but are not credible to preclude at least light work." Record at 22. The Secretary concluded that "claimant has the residual functional capacity to perform a full range of at least light work. Claimant has past relevant work experience as a school bus driver.... Since claimant's past relevant work experience as a school bus driver is within his residual functional capacity, he must be found to be 'not disabled....'"

DISCUSSION:

When a claimant seeks entitlement to disability benefits under the Social Security Act, as amended, an evaluation of the claim is made under a five-step sequential analysis set forth in 20 C.F.R. § 404.1520 and summarized as follows:

1. The ALJ determines whether the applicant currently is working; if so, the claim is DENIED.

2. The ALJ determines *solely on the basis of medical evidence* whether the claimed impairment is "severe," that is, of a magnitude sufficient to limit significantly the individual's "physical or mental ability to do basic work activities" if it is not, the claim is DENIED.

3. The ALJ decides, again using only medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the impairment listings of the regulations; if it does, the claimant *automatically* is awarded disability benefits.

4. The ALJ considers whether the applicant has sufficient "residual functional capacity"—defined as what an individual "can still do despite his limitations"—to perform his *past work;* if so, the claim is DENIED.

5. The ALJ adjudicates, on the basis of the claimant's age, education, work experience, and residual functional capacity,

whether the applicant can perform *any* other gainful and substantial work within the economy. It is only during this final stage of the decision-making process that the ALJ is authorized to make use of the "grid"—that is, the medical-vocational tables set out in Appendix 2 of the regulations.

In the case *sub judice,* the Secretary determined that plaintiff had the sufficient residual functional capacity to perform his past work, and therefore, he denied plaintiff's claim.

In reviewing this case, the court must affirm the Secretary's decision if it is supported by substantial evidence. *Hale v. Bowen,* 831 F.2d 1007, 1010 (11th Cir.1987). "Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. (citation omitted). It is more than a scintilla, but less than a preponderance." *Id.* at 1011, *quoting Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). Although this review is limited, the court must scrutinize the record in its entirety to evaluate the reasonableness of the Secretary's factual findings. Further, the court must determine whether the Secretary applied the proper legal standards in evaluating the claim. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir.1987).

■ When subjective complaints of pain are present the Secretary must consider whether the evidence establishes an underlying medical condition which could reasonably be expected to produce the pain. *See Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir.1987). While the Secretary may refuse to credit plaintiff's subjective complaints of pain, he must do so explicitly, and he must provide reasons for that decision. *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986). The reasons articulated by the Secretary must be supported by substantial evidence. *Hale,* 831 F.2d at 1012.

■ This court determines that the Secretary's decision to credit plaintiff's subjective complaints of pain only so far as those complaints preclude plaintiff from engaging in heavy work is not supported by substantial evidence. Plaintiff suffers from degenerative lumbosacral disease, degenerative arthritis and mild bulging of the annulus. Dr. Hornback's conclusion that such problems correlate with plaintiff's subjective complaints is unrefuted. Plaintiff's testimony, Mrs. Nelons' testimony and the observations of the Secretary's employees corroborate plaintiff's complaints. Medical evidence that plaintiff has essentially a full range of motion and normal sensory, motor and reflex responses are not contradictory to a finding of degenerative lumbosacral disease and its accompanying pain.

Besides substantially discrediting plaintiff's subjective complaints of pain, the Secretary discredited Dr. Hornback's identification of numerous significant restrictions on plaintiff's activities as "contrary to all the other medical evidence...." Record at p. 20. This decision by the Secretary is not supported by substantial evidence. Similar limitations are identified in the Record at pp. 192–193.

Finally, the Secretary determined that plaintiff could perform light work, including his past relevant work as a school bus driver. The definition of light work includes jobs which require "a good deal of walking or standing" and jobs which involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities." *Id.* The record is replete with evidence which indicates that plaintiff's condition precludes him from engaging in such work. Plaintiff suffers from a combination of ailments which, when properly credited, render him incapable of walking, sitting or standing for extended periods. Plaintiff has only a limited ability to manipulate leg or arm controls. Plaintiff cannot engage in light work.

The court notes that the Dictionary of Occupational Titles describes driving a bus as medium work. Thus, even if plaintiff could engage in light work, plaintiff's relevant work experience does not fall in that category. A finding to the contrary is clearly erroneous. In any event, this court questions the wisdom of finding an individ-

ual with poor eyesight and an inability to manipulate leg or arm controls capable of driving a bus.

 This court having determined that plaintiff is incapable of performing his past work and that plaintiff cannot perform light work, it becomes incumbent upon the Secretary to determine whether plaintiff, considering his age, education and work experience, can perform other gainful and substantial work within the economy. 20 C.F.R. § 404.1520(f). At this stage of the proceeding, the Secretary is normally authorized to utilize the vocational tables ("grids") set out in Appendix 2 of the regulations. However, "[e]xclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985). This court has determined that plaintiff suffers ambulatory difficulties and movement limitations which make it impossible for plaintiff to perform a full range of work at the sedentary level. Further, this court has identified plaintiff's pain as a non-exertional impairment, and pain is a non-exertional impairment which limits the range of jobs plaintiff can perform. *See Walker*, 826 F.2d at 1002–03. "When the grids are not controlling, the preferred method of demonstrating job availability is through expert vocational testimony." *Id.* at 1003, citing *Francis*, 749 F.2d at 1566.

In accordance with the foregoing discussion, this court REVERSES the Secretary's decisions that plaintiff can perform light work and that plaintiff can perform his past job. These decisions are not supported by substantial evidence. This matter is REMANDED with instructions to the Secretary that, since reliance upon the grids is inappropriate, expert vocational testimony must be produced to demonstrate the availability of a job for which plaintiff is qualified.