**Paul W. MARTIN, Petitioner–Appellant,**

v.

**RAILROAD RETIREMENT BOARD, Respondent–Appellee.**

**No. 90–4079**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

July 9, 1991.

---

231

Susan Allan, Barkan & Neff, Frank J. Neff, Tampa, Fla., for petitioner-appellant.

Beatrice Ezerski, Secretary to the Bd.

Collen R. O'Rourke, Tampa, Fla.

Steven A. Bartholow, Railroad Retirement Bd.

Edward S. Hintzke, Stanley Jay Shuman, Chicago, Ill., for respondent-appellee.

Before FAY, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

Paul Martin applied to the Railroad Retirement Board's Bureau of Retirement Claims for employee's disability annuity benefits. His application was denied, and the denial was affirmed by an appeals referee, and then by the Railroad Retirement Board (the "Board").[1] He now appeals to this court, pursuant to 45 U.S.C. § 231g (1988). Martin alleges that the Board's appeals referee improperly applied this circuit's pain standard to Martin's subjective complaints of pain, and erroneously found them not to be credible. In addition, Martin argues that the referee erred as a mat-

---

**1.** 20 C.F.R. § 200.2 (1990) sets out the procedure for filing and appealing claims to the Railroad Retirement Board. According to the regulations, one seeking a benefit must file an application, which is then considered by the Bureau of Retirement Claims. 20 C.F.R. § 200.2(a)(1) (1990). The Bureau makes initial decisions on the application for benefits based upon the application and other evidence and information submitted. 20 C.F.R. §§ 200.2(a)(1), 200.2(a)(1)(i) (1990). If a claimant is dissatisfied with the Bureau's initial determination, he or she may appeal to the Bureau of Hearings and Appeals. 20 C.F.R. § 200.2(a)(2) (1990). The claimant may have an oral hearing before a hearings officer (appeals referee), at which he or she may present additional evidence. 20 C.F.R. § 200.2(a)(2) (1990). If the claimant is dissatisfied with the decision of the hearings officer (appeals referee), the claimant may then appeal to the Board itself. 20 C.F.R. § 200.2(a)(2) (1990). After an unsuccessful appeal to the Board, a claimant may file a petition for review in the appropriate U.S. Court of Appeals. 20 C.F.R. § 200.2(a)(2) (1990).

In the case before us, Martin filed an application with the Bureau of Claims, which was denied. He requested the Bureau to reconsider his application. That request was also denied. He then appealed to the Bureau of Hearings and Appeals. The appeals referee held a hearing, received additional evidence, and then issued an opinion affirming the denial of Martin's claim. Martin then appealed to the Board itself. A majority of the Board's three-member panel affirmed and adopted the appeals referee's opinion. Martin then petitioned this court to review the Board's decision.

ter of law in relying solely upon the Social Security Medical–Vocational Guidelines in determining that Martin was not entitled to a disability annuity. For the reasons that follow, we find that the referee's application of our circuit's pain standard was proper, its determination regarding the credibility of Martin's complaints of pain was supported by substantial evidence, and its reliance upon the Medical–Vocational Guidelines was appropriate. Accordingly, we AFFIRM.

## BACKGROUND

Mr. Martin, who was born on July 14, 1940, is high school-educated and last worked as railroad locomotive engineer on July 21, 1983. On that date, Martin sustained an injury to his back while on the job. Martin claims that this injury has disabled him since that date due to impairments in his back and neck.

When Martin was initially treated for his injury, x-rays of his spine were taken and determined to be "normal." Subsequently, in August of 1983, Martin visited a Dr. Kite, who diagnosed Martin as suffering from cervical strain and showing signs of a herniated disc. Dr. Kite treated Martin until March of 1986, at which time he found Martin's ability to move his neck to be "fairly good," and his ability to raise a straight leg to be normal. His report made no mention of any complaints of pain, use of medicine or of a TENS unit.

In August of 1986, Martin filed an application for a disability annuity under the Railroad Retirement Act. In December of 1986, at the recommendation of the Board's Bureau of Claims, a Dr. Vega examined Martin. His examination revealed some limitation of motion, a small well-healed chip fracture, but no notable abnormalities. In April of 1987, the Board's Bureau of

Claims denied Martin's application because it determined that his condition was not severe enough to prevent him from performing any regular and substantial work. Martin requested reconsideration of the denial, but it was refused.

Therefore, on January 14, 1988, Martin appealed the denial of reconsideration to the Board's Bureau of Hearings and Appeals. Dr. Vega again examined Martin. After taking new x-rays, he made basically the same findings as in his first examination. An appeals referee held a hearing on September 14, 1988. On September 29, 1988, the Board referred Martin to Dr. Mussenden, a psychologist, to evaluate his overall intellectual functioning and emotional stability. Dr. Mussenden diagnosed Martin as suffering from an adjustment disorder with depressed mood. However, Dr. Mussenden concluded that Martin suffered no personality disorder, and gave a fair prognosis for his rehabilitation. Martin then underwent a neurologic examination by Dr. Dillenbeck, a neurologist. The examination failed to reveal any objective evidence to support Martin's complaints of pain.

Following the appeal hearing and the subsequent medical examinations, the appeals referee issued an opinion on December 27, 1988, which held that Martin was not entitled to a disability annuity under 45 U.S.C. § 231a(a)(1)(v) (1988) [2]. On February 27, 1989, Martin appealed the referee's decision to the Board. On October 3, 1990, a majority of the Board affirmed and adopted the decision of the appeals referee. This appeal followed.

## DISCUSSION

Our standard of review is that we affirm the Board if its factual finding is supported by substantial evidence and its decision is

---

**2.** 45 U.S.C. § 231a(a) provides:

(1) The following-described individuals, if they shall have completed ten years of service ... shall be entitled to annuities in the amounts provided under section 231b of this title—

. . . .

(v) individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment. 45 U.S.C. § 231a(a)(1) (1988). Martin was not entitled to an annuity under subsection (iv) because he had neither attained age sixty nor completed twenty years of service with the railroad industry. *See* 45 U.S.C. § 231a(a)(1)(iv) (1988).

not based upon an error of law. *Johnson v. Railroad Retirement Bd.*, 925 F.2d 1374, 1376 (11th Cir.1991); *George v. Railroad Retirement Bd.*, 738 F.2d 1233, 1235 (11th Cir.1984); *Railroad Concrete Crosstie Corp. v. Railroad Retirement Bd.*, 709 F.2d 1404, 1407 (11th Cir.1983). On appeal, "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Board]." *See Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983) (Social Security case). Instead, we are limited to scrutinizing the record to determine if the decision is supported by substantial evidence. *Id.*

### 1. Martin's complaints of pain

■ Martin first argues that the referee failed to apply this circuit's pain standard properly to his complaints of pain, and therefore erred in finding them not credible. We disagree.[3] First, we look at the pain standard, first stated in *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir.1985), and more recently restated in *Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1215 (11th Cir.1991). Under the three-part test:

> [A] claimant who satisfies the first part of the [pain] standard by proving the existence of an underlying medical condition through objective medical evidence may establish disability based on pain by his own testimony supported by either of two alternative kinds of medical evidence. The claimant may show *either* that *objective* medical evidence *confirms* the pain testimony, *or* that the objectively determined medical condition *could reasonably be expected* to give rise to the alleged pain.

*Elam*, 921 F.2d at 1215 (emphasis in original) (citations omitted).

The appeals referee determined that Martin had proved the existence of an underlying medical condition through objective medical evidence (exertional impairments "of his neck and back" (R.27)).

Therefore, Martin established the first requirement of the standard. Nevertheless, we find that the referee's finding that Martin was not disabled was supported by substantial evidence. The objective medical evidence in the record does not confirm Martin's testimony of subjective complaints. Therefore, Martin failed to establish part two of the standard. Also, the referee's finding that the objectively determined medical condition could not reasonably be expected to give rise to the alleged pain was supported by substantial evidence. Therefore, Martin failed to establish part three of the standard.

Martin testified that he suffers from neck pain which extends all the way down to his right arm. He stated that his right hand becomes numb daily for several hours, rendering him unable to write. He also claimed that his neck pain limits quick head movements. Martin also testified that he suffered severe lower back pain. Although the pain only occurs between five and six times a year, he claimed that the pain on such occasions is excruciating. On those occasions, he said he is unable to move about. In addition to these two complaints, Martin also complained of twinges on damp days, and discomfort while sitting for long period, including numbness in his right leg.

Yet, Martin could produce no x-ray evidence to support such allegations of pain. Furthermore, despite Dr. Kite's diagnosis of signs of a herniated disc, Dr. Dillenbeck, the neurologist, refuted and negated this diagnosis. The referee also determined that Martin was able to lift and carry up to thirty pounds frequently, and that Martin could stand and walk for four hours without interruption, or up to eight hours with interruptions.

No evidence in the record *confirms* Martin's testimony regarding his pain, and the referee found no objective evidence of an underlying condition that reasonably could

---

**3.** Martin also contends that he suffers from a mental impairment which imposes restrictions on his ability to perform gainful employment. He appeals the referee's finding that his non-exertional mental impairments do not significant-

ly limit his exertional ability to do light work. See *infra* section 2. However, based upon our review of the record, we conclude that the appeals referee's determination is supported by substantial evidence.

be expected to cause the type and degree of pain alleged by Martin. Therefore, the record supports the referee's findings, and his findings are consistent with our circuit's pain standard.

■ In this case, the referee did not find Martin's testimony regarding his pain to be credible. The referee may discredit a claimant's testimony regarding pain; however, it may not do so arbitrarily. *Elam*, 921 F.2d at 1215. If the referee does discredit such testimony, it must "articulate 'explicit and adequate' reasons for doing so." *Id.* (quoting *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)).

■ Although Martin testified that he had disabling pain, he also testified that he has not been treated by a physician since 1986, that he is under no medication, that he only occasionally wears a TENS unit to relieve back pain, and that he has not a seen physician because he thinks the doctor would want him to undergo surgery. The referee considered Martin's testimony in light of the other evidence of record, and then concluded that his testimony was "greatly out of proportion to the medical findings." The referee explicitly pointed out "important inconsistencies" between Martin's complaints and Martin's own actions, as well as inconsistencies with the objective medical evidence, in finding the complaints to be not credible. We think that the referee articulated "explicit and adequate" reasons for discrediting Martin's complaints.

2. Referee's reliance upon Medical–Vocational Guidelines

■ Martin next argues that the referee erred as a matter of law in relying upon the Medical–Vocational Guidelines[4], 20 C.F.R. pt. 404, subpt. P, app. II (the "grids"), to find that Martin was not entitled to an annuity. We disagree.

■ Once a claimant has established that he cannot return to his past relevant work, the burden shifts to the Board to prove that he is capable, considering his age, education, and work experience, of engaging in some other kind of employment. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir.1987). In the case before us, the referee determined that Martin was no longer able to return to his past relevant work. Therefore, the burden was then on the Board to show that Martin was capable of other gainful employment. It is at this stage that the grids may become applicable. The Medical–Vocational guidelines include detailed rules and grids which, based on a claimant's residual functional capacity, education, age, and previous work experience, direct the referee to make a finding of disabled or not disabled. *Walker*, 826 F.2d at 1002. Yet, it is the law of our circuit that

"Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."

*Id.* (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir.1985)). Additionally, the grids are not to be used when "the claimants non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments." *Id.* (citing *Smith v. Bowen*, 792 F.2d 1547, 1554 (11th Cir. 1986); 20 C.F.R. pt. 404, subpt. P, app. II § 200.00(e)) (emphasis deleted). Yet, the referee may rely on the grids despite certain non-exertional impairments, such as those found to be not credible. *See Francis*, 749 F.2d at 1566–67.

The referee in this case determined that Martin suffered from minor exertional impairments of the neck and lower back, based upon the record evidence. Yet, he determined that the objective evidence showed that Martin still possessed the exertional capacity to perform light work. The referee also found that Martin suffered from minor non-exertional impair-

---

4. Because "[t]he provisions of the Railroad Retirement Act are so closely analogous to those of the Social Security Act ... regulations and cases interpreting the latter are applicable to the former." *Elam*, 921 F.2d at 1213 (citation omitted). Therefore, the referee may apply relevant Social Security regulations to Railroad Retirement Act cases when appropriate.

ments due to depression and somatoform disorder. However, he determined that Martin's non-exertional impairments, as well as his subjective complaints of pain, "do not significantly limit his exertional capacity for light work." (R.29).

The referee's determination that Martin's non-exertional impairments do not significantly limit his exertional ability to perform light work is supported by substantial evidence. Accordingly, the referee did not err in relying on the grids. We therefore AFFIRM the Board's opinion affirming the decision of the appeals referee.